KDE:MEG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

        - against -

JOHN WARREN,
        also known as "Smilez,"

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

19M1112

**TO BE FILED UNDER SEAL**

COMPLAINT IN SUPPORT
OF APPLICATION FOR AN
ARREST WARRANT

(18 U.S.C. § 924(c)(1)(A)(i),
924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 3551
et seq.)

EASTERN DISTRICT OF NEW YORK, SS:

        STEVEN SCHILIRO, being duly sworn, deposes and states that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

        On or about July 28, 2018, within the Eastern District of New York, the defendant JOHN WARREN, also known as "Smilez," did knowingly and intentionally use and carry a firearm during and in relation to a crime of violence, to wit: Attempted Murder In-Aid-Of Racketeering, in violation of Title 18, United States Code, Section 1959(a)(1), and did knowingly and intentionally possess such firearm in furtherance of said crime of violence, which firearm was brandished and discharged.

        (Title 18, United States Code, Sections 924(c)(1)(A)(i), 924(c)(1)(A)(ii), 924(c)(1)(A)(iii) and 3551 et seq.)

The source of your deponent's information and the grounds for his belief are as follows:[1]

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been involved in the investigation of numerous cases involving violent street gangs. I have experience with, among other things, executing search warrants, debriefing confidential informants, conducting surveillance in an undercover and overt capacity, conducting toll analysis, and reviewing and analyzing data obtained from various media. I am familiar with the facts and circumstances set forth below from my participation in the investigation; my review of the investigative file, including video and audio recordings; and from reports of other law enforcement officers involved in the investigation.

2.      On July 28, 2018, at approximately 4:05 a.m., an individual whose identity is known to the undersigned (the "Victim"), was shot in the back and neck while in the vicinity of 533 Glenmore Avenue in Brooklyn, New York. The Victim survived the shooting. For the reasons set forth below, I believe that the defendant JOHN WARREN is a member of the Elite Assassin Millas ("EAM"), a criminal enterprise and a subset of the Bloods street gang (the "Enterprise"), and that the defendant shot the Victim in retaliation for the Victim's earlier act of disrespect toward another member of the Enterprise, and for the purpose of maintaining and increasing his position in the Enterprise.

---

[1]      Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

### Evidence that the Defendant Shot the Victim

3. Surveillance video captured in the vicinity of the shooting on July 28, 2018 depicts the shooter—now known to be the defendant—wearing a hooded top while getting out of a parked dark-colored four-door sedan (the "Subject Vehicle"). The shooter then approached the Victim and fired multiple shots while chasing after the Victim, who had started to run away as the shooter approached. The shooter then returned to the Subject Vehicle and fled westbound on Glenmore Avenue. On July 31, 2018, a detective in the Auto Crimes division of the New York City Police Department ("NYPD") reviewed surveillance video depicting the Subject Vehicle and determined that it had the characteristics of a Nissan Altima four-door sedan likely manufactured between 2016 and 2018.

4. I have reviewed records maintained by the Department of Motor Vehicles, which reveal that a grey 2017 Nissan four-door sedan bearing license plate HVZ4989 is registered to the defendant. I have also reviewed images recorded by a license plate reader maintained by the NYPD, which reveal that on July 28, 2018 at approximately 4:21 a.m. (approximately 16 minutes after the shooting occurred), the Nissan registered to the defendant was driving in the 79th Precinct, less than two and a half miles from the scene of the shooting. Furthermore, on August 3, 2018, members of the NYPD conducted a traffic stop of the grey 2017 Nissan four-door sedan that is registered to the defendant after having observed a traffic infraction. I have reviewed body camera footage of one of the officers (the "NYPD Officer") depicting the car stop and observed that the defendant was the driver of the Subject Vehicle that day. I am informed by the NYPD Officer that the defendant

presented the identification of another individual during the car stop and was released without charges.

5. On August 13, 2018, the defendant was taken into custody by a New York State Senior Parole Officer for violating the terms of his parole. Pursuant to that arrest, the defendant's cellphone was seized. On September 18, 2018, the Honorable Robert M. Levy, United States Magistrate Judge for the Eastern District of New York, signed a warrant authorizing a search of the defendant's cellphone, the number of which is (929) 330-0289. A search of the contents of the defendant's cellphone revealed evidence of the defendant's motive and intention to kill the Victim.

6. For instance, a search of the contents of the defendant's cellphone revealed that on July 24, 2018—four days before the Victim was shot—the defendant exchanged the following messages with another person regarding the Victim:

| | |
|---|---|
| OTHER PARTY: | [Photograph of the Victim] This the nigga right [contemplative emoticon] |
| DEFENDANT: | Yea Brody |
| OTHER PARTY: | Kopy I put the word out [emoticons] ima keep my eyes open for son but I'm letting u know like I put the word out that he gotta go not that he just gotta get smoked |
| DEFENDANT: | Aight Brody |
| DEFENDANT: | No hot phone shit |
| OTHER PARTY: | Nah this the last time I'm bringing his up ova the phone |
| OTHER PARTY: | We talk in person. |
| DEFENDANT: | DOA |

### Evidence of the Defendant's Membership in the Enterprise

7.      Based on my training, experience and knowledge of the investigation, I am aware that the defendant is a member of EAM, which is a subset of the New York Bloods street gang. At the time of the charged crime, EAM, including its leadership, membership and associates, constituted an "enterprise" as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that was engaged in, and the activities of which affected, interstate and foreign commerce. The Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise. EAM, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), that is, acts involving murder that are chargeable under New York Penal Law and punishable by imprisonment for more than one year, and offenses involving drug trafficking, punishable under Title 21, United States Code, Sections 841 and 846. The purposes of the Enterprise included, among other things, promoting and enhancing the prestige, reputation and position of the Enterprise with respect to rival criminal organizations and keeping rivals in fear of the Enterprise. To achieve the purposes of the Enterprise, among other methods, members and their associates have committed, attempted to commit and threatened to commit acts of violence, including acts involving murder and assault, to enhance the Enterprise's prestige and protect and expand the Enterprise's criminal operations.

8.      My knowledge that the defendant is a member of EAM is based in part on my review of the contents of the defendant's cellphone, which revealed that the defendant was in possession of, and distributed to others, documents containing sensitive

EAM information that is intended to only be made available to EAM members. For example, on June 26, 2018 (approximately one month before the Victim was shot), the defendant sent the following material, among others, to another person:

- An attachment entitled "E.A.M. OATH," which read in part:

   > To be elite assassin milla one must know what one does affects us all so to be elite one must move discreet.

- An attachment entitled "21 second oath And pledge," which read in part:

   > It take 21 seconds, 2 be blood, being blood is about respecting your family and doing what you could, learning 2 love and trust your brothers and sisters while protecting ur hood, left over my heart is how I be, then it's death 2 my enemies. I take this oath in total devotion and dedication, representing ride or die, or its death that I'm facing. . . . East be the way by milla I stay

9. That same day, the defendant also sent the "E.A.M. OATH" to a second person and wrote to that person: "You have 21 days to remember ur ELITE ASSASSIN MILLA OATH and 21 second oath." These excerpts from the defendant's cellphone reveal that members of EAM are expected to vow loyalty to their fellow gang members ("representing ride or die") and be willing to kill those who threaten or disrespect a fellow gang member ("being blood is about respecting your family . . . while protecting ur hood . . . then it's death 2 my enemies."). As set forth below, I am aware that the Victim became an "enemy" of the Enterprise when he got into a physical altercation and then exchanged gunfire with an EAM member, whose identity is known to the undersigned (the "Enterprise Member")[2] on June 10, 2018 (hereinafter, the "June 10 Shooting").

---

[2] I am aware that the Enterprise Member is a member of EAM based in part on my search—pursuant to a lawfully authorized warrant—of messages stored on a cellphone that

### Evidence That the Victim Became an "Enemy" of EAM Before the Defendant Shot Him

10. I have reviewed video surveillance footage of a confrontation that occurred between the Victim and the Enterprise Member on Pitkin Avenue on the night of June 10, 2018. In the video, both men can be seen attempting to punch one another while on the sidewalk outside of the Fiorentino Houses, a New York City Housing Authority complex that I know to be commonly referred to as the "Pitkin Projects." Moments later, the Enterprise Member and the Victim can be seen temporarily leaving the scene. A short time later, a Nissan Altima can be seen stopping in the middle of the road; an individual—whose identity is not readily apparent from the video, but whom I now know to be the Enterprise Member —can be seen getting out of the car, opening the hood, and removing an object from the hood of the car before firing a firearm in the direction of where the physical altercation between the Enterprise Member and the Victim occurred a short time earlier. I am informed by the NYPD that shell casings from two different firearms were recovered from the scene shortly thereafter, thereby indicating that there were two individuals shooting.

11. I am further aware that the Victim, who can be seen firing a weapon on the surveillance video, was arrested by the NYPD for his role as one of the two shooters and was subsequently incarcerated on Rikers Island. I am now aware that the Enterprise Member was the other shooter, and, specifically, the one who exited the Nissan Altima. My belief that the Enterprise Member was the second shooter is based, in part, on my knowledge of the following: (a) the Enterprise Member engaged in a physical altercation with the

---

was recovered from the Enterprise Member following his arrest, in which, for example, he greeted another person with the phrase, "yo whats shooting AK," which, based on my training, experience and participation in the investigation, I know to be used among members of the gang.

Victim at the same location a short time earlier; (b) the Enterprise Member was driving the same Nissan Altima on January 1, 2019, when he was stopped by NYPD officers for committing a traffic infraction and subsequently arrested for possessing narcotics with the intent to sell them; (c) an inventory search of the Nissan Altima following the Enterprise Member's arrest led to the discovery of a firearm concealed under the hood, the same location where the second shooter appeared to retrieve the firearm used in the June 10 Shooting; and (d) the firearm that was used in the June 10 Shooting was recovered during a January 25, 2019 search—pursuant to a court- authorized search warrant—of a storage unit that the Enterprise Member rented under a false name prior to his January 1, 2019 incarceration.[3]

        12. The defendant's knowledge of the Victim's role in the June 10 Shooting, and his motive to violently retaliate against the Victim as a result, is apparent in a June 16, 2018 telephone call between the defendant and another member of EAM who was incarcerated at Rikers Island (the "Incarcerated Enterprise Member"), that occurred less than one week after the June 10 Shooting. In the recorded call, the Incarcerated Enterprise Member inquired of the defendant whether any retaliatory action should be taken against the Victim: "Yo listen – remember the situation that happened that night? In the Pitkins P's [i.e., projects]. Alright, so what's the verdict with them niggas, cause one of them niggas just pulled up for the shooting that happened that night." The defendant then sought to clarify whether the Incarcerated Enterprise Member was talking about the Victim by asking,

---

[3] I am aware that an NYPD firearms expert made this determination after comparing ballistic evidence that was recovered from the scene of the June 10 Shooting to ballistic evidence generated by test firing ammunition using the firearm recovered from the storage unit locker.

"the nigga [Victim's nickname]?" to which the Incarcerated Enterprise Member replied, "Yeah, yeah, yeah, exactly." The defendant then authorized the Incarcerated Enterprise Member to retaliate against the Victim stating, "Um, um, get him out of there, fuck that." Based on my training, experience and knowledge of the investigation, I believe that "get him out of there" was a directive to assault the Victim, which would cause the Department of Corrections to transfer the Victim to another housing unit. I am aware that shortly after that telephone call, the Victim was assaulted at Rikers Island and sustained a head injury. In another recorded telephone call two days later, on June 18, 2018, the Incarcerated Enterprise Member reported to a third party that he was responsible for the assault on the Victim, stating, "[Victim's nickname]" was "locked up for the shooting that night" and "I just had my drop [i.e., junior gang member who reports to the Incarcerated Enterprise Member] punch his head off."

    13. It is respectfully requested that this Court issue an order sealing, until further order of the Court, this complaint, as well as any related arrest warrant, with the exception of allowing copies of the arrest warrant to be provided to law enforcement as necessary to effect the defendant's arrest. See United States v. Amodeo, 44 F.3d 141, 147 (2d Cir. 1995) (need to protect the integrity of an ongoing investigation, including the safety of witnesses and law enforcement personnel, and to prevent interference, flight and other obstruction, may be compelling reason justifying sealing).

WHEREFORE, your deponent respectfully requests that an arrest warrant be issued so that the defendant JOHN WARREN, also known as "Smilez," can be dealt with according to law.

STEVEN SCHILIRO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
22 day of November, 2019

THE HONORABLE ROANNE L. MANN
CHIEF UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK